UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EARL BRADLEY,<br><br>Plaintiff,<br><br>v.<br><br>GLORIA PERRY, DMD,<br><br>Defendant. | : | 3:23-CV-01623 (SFR) |

**MEMORANDUM & ORDER**

Plaintiff Earl Bradley, an individual serving a sentence in Connecticut Department of Correction ("DOC") custody, brought this action under 42 U.S.C. § 1983 against multiple defendants for deliberate indifference to his dental needs in violation of the Eighth Amendment while he was incarcerated at Cheshire Correctional Institution ("Chesire").[1] Following initial review of Bradley's Complaint, the Court[2] ordered Bradley's deliberate indifference claim to proceed against Defendant Gloria Perry, DMD in her individual capacity. Perry moves for summary judgment on the grounds that: (1) Bradley's claim is barred by the doctrine of collateral estoppel and res judicata; (2) the undisputed evidence demonstrates that Bradley failed to exhaust his administrative remedies before filing this action; (3) Bradley's Eighth Amendment claim fails as a matter of law; and (4) judgment should be granted in her favor because she is entitled to qualified immunity. For the reasons set forth below, I conclude that Bradley's Eighth Amendment claim fails as a matter of law and grant Perry's Motion for

[1] Def.'s L.R. 56(a)(1) Stmt. ¶ 1, ECF No. 35-2.

[2] This case was previously assigned to United States District Court Judge Kari A. Dooley. The case was transferred to me on January 6, 2025. See Transfer Order, ECF No. 31.

Summary Judgment, ECF No. 35.

# I. BACKGROUND

## A. Factual Background

The relevant facts set forth herein are taken from Perry's Local Rule 56(a)1 statement,[3] ECF No. 35-2, and supporting exhibits, ECF Nos. 35-4 to 35-12, 36, Bradley's Local Rule 56(a)(2) Statement, ECF No. 40 at 17-35, Additional Material Facts, *id*. at 36-38, supporting exhibits, *id*. at 39-40, as well as Bradley's verified Complaint, ECF No. 1.

At all relevant times, Bradley was serving a sentence in DOC custody and housed at Cheshire. Def.'s L.R. 56(a)(1) St. ¶ 1. Perry has been assigned to Cheshire as a dentist since August 2022, and her responsibilities include diagnosis and treatment of dental issues. *Id*. ¶¶ 42-43. Perry maintains that her other responsibilities include prioritizing treatment and

[3] Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. Perry informed Bradley of his obligation to respond to the motion for summary judgment and the contents of a proper response. *See* Notice to Pro Se Litigant Opposing Motion for Summary Judgment as Required by Local Rule of Civil Procedure 56(b), ECF No. 35-3. To the extent that Bradley has not refuted Perry's Local Rule 56(a)(1) Statement with specific citations to admissible evidence, Perry's facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1; *see also Evans v. Kirkpatrick*, No. 08-cv-6358, 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2013) (citing *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (The fact that Bradley is unrepresented does not excuse him from complying with the court's procedural and substantive rules.).

Bradley has provided a copy of Perry's Local Rule 56(a)(1) Statement in which he marks "Admit," "Deny" or "Object," 18-28, ECF No. 40, as well as a notarized affidavit discussing each denial or objection, *id*. at 30-35, (collectively, "Plaintiff's Local Rule 56(a)(2) Statement"). Where Bradley denies or objects to a statement in Perry's Local Rule 56(a)(1) statement, I cite to the copy of Perry's Local Rule 56(a)(1) statement provided by Bradley, as well as Bradley's notarized affidavit discussing each denial or objection. When Bradley admits a fact stated in Perry's Local Rule 56(a)1 Statement, I cite only to Perry's Local Rule 56(a)1 Statement. *See* Def.'s L.R. 56(a)(1) Stmt., ECF No. 35-2. Citations to the Local Rule 56(a) Statements are by paragraph number. With respect to other documents, page citations are to the page number generated by the ECF system.

working within the restrictions of security and safety under the custody of staff, but that her responsibilities do not include scheduling treatments for prisoners for dental purposes. *Id.* ¶¶ 43-44. Bradley denies that Perry does not schedule treatment for inmates, stating that it is inconsistent for her to state that she prioritizes treatments but does not schedule them. Pl.'s L.R. 56(a)(2) St. 24 ¶ 44; *id.* at 30-31 ¶¶ 3-4.

In December 2020, before Perry arrived at Cheshire, Bradley contracted COVID-19 and was transferred to MacDougall-Walker Correctional Institution. Compl. 4 ¶¶ 1-2, ECF No. 1. When Bradley returned to Cheshire that same month, his dental bridge consisting of six upper front teeth was missing. *Id*. Bradley then sought a replacement partial denture. *Id*. at 4 ¶ 3. As a result, Bradley had multiple dental appointments to obtain a replacement partial denture. *See* Med. R., ECF No. 36.

At the outset, Bradley had two dental appointments in which the need for tooth extractions was addressed in relation to being able to obtain a replacement partial denture. Def.'s L.R. 56(a)(1) St. ¶ 45. On June 30, 2021, Bradley met with Dr. Fisher, and Bradley had tooth number 7 extracted, but he declined the extraction of tooth number 6, his upper left cuspid (canine tooth). *Id*. ¶ 46; *see also* Med. R. 73-75 ("Tooth Extraction completed on Tooth #7. . . . I/M prefers to retain tooth #6 and deal with it in the future. . . .").[4] Bradley's medical records indicate that he was not experiencing any pain at the time of this visit. *See id.* at 69.

On October 6, 2021, Bradley had another dental appointment with Dr. Fisher. Def.'s L.R. 56(a)(1) St. ¶ 47. During this visit, Bradley refused the extraction of tooth number 11, his upper right cuspid (canine tooth), Def.'s L.R. 56(a)(1) St. ¶ 47, but Dr. Fisher extracted teeth

[4] "I/M" is an abbreviation for "Inmate."

numbers 9 and 10, Med. R. 64-65. Bradley objects on the ground that the "context is distorted and misleading," stating that "he did not in the context of the dental visit 'refuse the extraction.'" Pl.'s L.R. 56(a)(2) St. 24 ¶ 47; *id.* at 33-34 ¶ 20.

Bradley's medical records also reflect that he signed an Oral Surgery Consent and Identification Form on October 6, 2021, to "authorize the following oral surgical procedures 'tooth 9/10/11[,]'" however, number 11 is crossed out with a note that states, "refused 10/6/21." Med. R. 60. Bradley's medical records for October 6, 2021, also indicate that he was not experiencing any pain. *Id*. at 62. Dr. Fisher documented "I/M presents sans complaint ready for continuing treatment Refused extraction #11 . . . Request submitted for PU to dental director . . . NV: preliminary impressions pending approval for PU."[5] *Id*. at 65.

Subsequently, on November 18, 2021, Bradley filed a state habeas corpus action in the State of Connecticut Superior Court, *Earl Bradley #415266 v. Commissioner of Correction*, No. TSR-CV22-5001124-S, "alleging that the DOC had violated his Eighth Amendment rights by willfully delaying and/or ignoring various medical and dental issues." Def.'s L.R. 56(a)(1) St. ¶ 67 (citing Mem. of Decision, ECF No. 35-12). On October 27, 2022, Bradley sought leave to amend his habeas corpus petition, which was granted by the Connecticut Superior Court. *See* Mot., Entry No. 109.00, Order, Entry No. 109.10, *Earl Bradley #415266 v. Commissioner of Correction*, No. TSR-CV22-5001124-S, https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV225001124S (last visited August 16, 2026).[6]

---

[5] "PU" is an abbreviation for "Partial Upper" and "NV" is an abbreviation for "Next Visit."

[6] On November 29, 2023, Bradley filed a "Motion Pursuant to Recent Discovery for Corrective Actions in the Interest of Justice and Truth," elaborating on his allegations contained within his

Less than one month later, on November 9, 2022, per the request of the Dental Director, Perry had an initial consult with Bradley to evaluate the feasibility of a partial denture. Def.'s L.R. 56(a)(1) St. ¶ 48. During the consult, Perry informed Bradley that both of his canine teeth, numbers 6 and 11, would need to be extracted and that a filling was required for tooth number 15. *Id.* ¶ 49. Perry documented that she completed "Restoration – Single – Amalgam completed on Tooth # 15 on Mesial . . . Oral Examination completed . . . Restoration – Single– Amalgam completed on Tooth # 15 on Occlusal. . . [and] X-Ray – Intraoral – Complete Radiographic Images completed on All Teeth." Med. R. 57.

Perry then met with Bradley in mid-February 2023.[7] Def.'s L.R. 56(a)(1) St. ¶ 50. Perry submits that she once again explained to Bradley that the extraction of his teeth was necessary, as they were too damaged to support a partial denture. *Id.* Perry asserts that Bradley declined the recommendation, expressing his desire to retain the teeth and stating, "Canines are strong teeth." *Id.* ¶ 50. Perry then preceded with the filling of tooth number 15. *Id.* ¶ 51; *see also* Med. R. 52 ("Amalgam tooth #15 MO. . . . Remove caries and filled. Check occlusion and advised not to chew directly on tooth or floss area for 24 hours.").

Bradley denies that he "refused pulling of teeth as which might preclude a partial plate," and submits that his "mere preference to keep the canines did not constitute a refusal and did

---

amended state habeas petition. Mot., Entry No. 126.00, *Earl Bradley v. Commissioner of Correction*, TSR-CV22-5001124-S.

[7] In Defendant's Local Rule 56(a)(1) Statement, Perry submits that she saw Bradley on February 14, 2023, and Bradley admits this fact. Def.'s L.R. 56(a)(1) St. ¶ 50. The Date of service listed on Bradley's medical records is "2/14/23," but the date listed under "Cumulative Completed" is shown as 02/15/2023 at 8:33 a.m., and Perry signed the medical notes on 02/15/2023 at 9:05:10 a.m. *See* Med. R. 51, 53. I find this potential date discrepancy to be immaterial.

not influence the Defendant's ultimate plans." Pl.'s L.R. 56(a)(2) St. 25 ¶ 50; *id.* at 31 ¶ 5. In Bradley's medical records, Perry documented "took PA 6, 11 need extraction[.] IM wants to keep because cainines [sic] are strong teeth, but these are too broken down [to] attach partial since we do not do crowns[.] Reviewed current xrays . . . NV: extraction of 6 or 11." Med. R. 52. Bradley's medical records indicate that Perry also performed an "X-Ray – Intraoral – Single Radiographic Image completed on Tooth # 6 . . . [and] Tooth # 11." *Id.* at 51.

A few months after Bradley's most recent visit with Perry, he filed an Inmate Request Form on May 19, 2023, in which he stated: "This request is submitted by direction of Judge Macnamara at [a] preliminary hearing today. To be clear, I absolutely consent to the pulling of two teeth (roots) in preparation for impressions and issue of a partial plate. Please respond with intentions and reasonable schedule since the court's time is at stake." Inmate Request Form, ECF No. 40, at 39.[8] Perry responded on May 23, 2023, stating, "You are on the list. If you are in pain you may write again." *Id.*

---

[8] Perry submits that she responded to Bradley's "incorrectly filed" May 19, 2023 Inmate Request Form on June 15, 2023. Def.'s L.R. 56(a)(1) St. ¶ 52. In support of this statement, Perry submits as an exhibit, an Inmate Request Form from Bradley dated May 19, 2023, in which she responded on June 15, 2023, stating, "All requests are time stamped before they are delivered to intended party. This slip has no official time stamp and therefore was never collected or received by the intended party. We cannot respond to request[s] that were not sent properly or more than likely never received." *See* Inmate Requests & HSAR's, ECF No. 35-8, at 48. In Bradley's Additional Statement of Facts, he submits that Perry responded to his May 19, 2023 Inmate Request Form on May 23, 2023, and that this discrepancy "constitute[s] deliberate deception of this court." Pl.'s Additional Facts 36-37 ¶ 1. Bradley has provided a May 19, 2023 Inmate Request Form with two timestamps—one showing that the Inmate Request Form was received on May 2, 2023 and one indicating May 20, 2023. This Inmate Request Form includes a response from Perry dated May 23, 2023. Inmate Request Form, ECF No. 40, at 39.

I find any discrepancy regarding Perry's response date immaterial given the other evidence Perry has provided, such as multiple Health Service Administrative Requests that were filed by Bradley and extensive dental records. It is possible this may have been a duplicative request or that Perry inadvertently responded more than once. I also find that Bradley has submitted no evidence to show that Perry attempted to deliberately deceive the court. However, because Bradley has

On June 12, 2023, Bradley filed a Health Services Administrative Remedy ("HSAR")[9] in which he checked the box for "Administrative" and stated, "1. See copy of CN9601 attached. 2. CN9601 never received any response. 3. The CN9601 was submitted under court order. 4. This grievance seeks answer, relevant for court purposes." *See* Requests & HSAR's, ECF No. 35-8, at 46. Perry responded on June 15, 2023, stating, "CN9601 – form not time stamped[.] Not received. We are aware of you now changing your mind about removing needed teeth before we can make a partial after you took the matter to court. We have you on the orders list for your extractions and then we can start your partial." *Id*. at 47. The HSAR was assigned # 4373, was marked "upheld" under the Disposition section, and the HSAR coordinator signed a receipt for HSAR # 4373 on June 13, 2023, which has the box for "CN 8901, HSAR Level 1" checked. *Id*. at 47, 49. Perry submits that Bradley's June 12, 2023 HSAR #4373 was incorrectly filed, Def.'s L.R. 56(a)(1) St. ¶ 52, but Bradley denies that he "incorrectly filed a health services administrative remedy," Pl.'s L.R. 56(a)(2) St. ¶ 52; *id.* at 31 ¶ 6.

On July 20, 2023, Bradley was seen for a routine prophylactic examination (dental cleaning), which was performed by a dental hygienist. Def.'s L.R. 56(a)(1) St. ¶ 53. Subsequently, on December 7, 2023, Bradley submitted another Inmate Request Form, in

---

proffered evidence to show that Perry responded to his May 19, 2023 Inmate Request on May 23, 2023, I will use the Inmate Request Form and Response that he provided as an exhibit, and I will disregard Perry's June 15, 2023 Inmate Request Response that she provided as an exhibit.

[9] In Perry's Local Rule 56(a)(1) Statement, she references thirteen HSAR's that were filed by Bradley between May 1, 2021, through January 31, 2024. Def.'s L.R. 56(a)(1) St., ECF No. 35-2 ¶¶ 27-41. Bradley objects to some of these HSAR's as "not dental, not material." Pl.'s L.R. 56(a)(2) St. 22-24 ¶¶ 27-41; *id.* at 32-33 ¶¶ 9-19. I have reviewed all thirteen of Bradley's HSAR's, as well as his Inmate Requests, and I find that the only HSAR's and Inmate Requests relevant to his deliberate indifference claim are those HSAR's and Inmate Requests that he submitted pertaining to his dental needs during the time Perry was at Cheshire.

which he stated, "1. This request should NOT be construed as any 'change of mind.' 2. Beginning the continuation of treatment with one tooth pulling would only be the first visit of at least four required (2nd tooth pulling, impression, delivery)[.] 3. I need information regarding 'informed consent,' otherwise treatment could have multiple extended periods of delay – perhaps lasting years." Inmate Requests & HSAR's, ECF No. 35-8, at 63, 67. The next day, on December 8, 2023, Perry responded to Bradley's Inmate Request, stating "Because you are housed in PC we can't mix you with the regular population[,] therefore[,] the visits will have to be worked out with other departments. Your treatment will require a number of visits[,] this is unavoidable. You still need to get teeth removed and all other work completed before we can begin partials. This is a large group of inmates who also wish to be seen so orders are spaced over months." *Id*. at 68.

A few days later, on December 12, 2023, Bradley filed his § 1983 Complaint against multiple defendants, including Perry, for deliberate indifference to his dental needs. Compl. After Bradley filed his § 1983 Complaint, on December 19, 2023, Dental Director Kasabji performed the extraction of Bradley's two "severely decayed teeth, numbers 6 and 11." Def.'s L.R. 56(a)(1) St., ECF No. 35-2 ¶ 55. Bradley admits that tooth numbers 6 and 11 were extracted, but he claims that he was never informed that his teeth were decayed and that nothing in the entire dental record corroborates that his teeth were severely decayed. Pl.'s L.R. 56(a)(2) St., ECF No. 40, at 26 ¶ 55; ECF No. 40, at 32 ¶ 7. Bradley's medical records indicate that he was not experiencing any pain during his December 19, 2023 visit. Pl.'s Med. R. 37, 40.

On January 9, 2024, Bradley submitted another HSAR, with the box checked for "Administrative." Inmate Requests & HSAR's 61. In the HSAR, Bradley stated, "1. Level 1

returned since not Health, corrected here[.] 2. An Inmate Request to Dental was submitted on 12/7/23 but never answered. 3. The request is a reasonable schedule for completion of dental plate. 4. Dr. Kasabji pulled two teeth since request, but other steps will be necessary before completion." *Id*. On January 10, 2024, the HSAR coordinator provided a receipt for Bradley's HSAR, which was assigned # 6081, and on January 12, 2024, the HSAR coordinator responded, "Rejected[.] This is a diagnosis & treatment. Remedy. Given new form to resubmit." *Id*. at 62, 64.

On January 12, 2024, Bradley submitted a new HSAR, which was duplicative of HSAR # 6081, with the only difference being that "Diagnosis/Treatment" was now checked, instead of "Administrative." *Id*. at 65. On February 3, 2024, Perry responded to Bradley's HSAR, which was assigned # 6294. *Id*. at 66. In Perry's response she wrote "denied" in the box for "Disposition" and she also wrote, ". . . As stated we do not schedule appointments. It will take a number of visits but you will be called. We also allow time for healing after teeth are removed." *Id*. at 66, 69.

After that, on April 9, 2024, Perry met with Bradley to begin the process of fitting him for a partial upper denture, and during this appointment, Perry took impressions of Bradley's mouth to create the partial upper plate. Def.'s L.R. 56(a)(1) St. ¶ 58. Bradley's next dental appointment was scheduled for May 10, 2024, but he was not sent to dental as planned. *Id*. ¶ 59; *see also* Med. R. 27 ("Called at 10 am for dental visit to make impression, Called again[.] [O]fficier [sic] said would send around 1pm. Officer did not send as planned. . . ."). Bradley's dental appointment was rescheduled to May 14, 2024, and on that date, Bradley saw Perry, and she took the final impression, bite impression, and selected the appropriate tooth shade for

his upper partial denture. Def.'s L.R. 56(a)(1) St. ¶ 60. Perry's notes indicate that the denture would be fitted during Bradley's next visit. *Id.*

Returning to address the procedural posture of Bradley's state habeas case, on June 4, 2024, and June 5, 2024, the Honorable Melissa Streeto ("Judge Streeto") conducted a bench trial in Connecticut Superior Court on Bradley's habeas corpus action. *See id.* ¶ 68; *see also Earl Bradley #415266 v. Commissioner of Correction*, No. TSR-CV22-5001124-S, Transcript, ECF No. 35-11. On June 5, 2024, Judge Streeto issued a Memorandum of Decision, finding that Bradley "ha[d] failed to sustain his burden of demonstrating that DOC acted with deliberate indifference regarding any of the dental issues complained of," and Judge Streeto denied Bradley's Petition for Writ of Habeas Corpus. Def.'s L.R. 56(a)(1) St. ¶ 69; *see also Earl Bradley #415266 v. Commissioner of Correction*, No. TSR-CV22-5001124-S, Mem. of Decision 2, 7.

After the denial of Bradley's Habeas Petition, Perry met with Bradley on July 23, 2024, to try on his partial upper denture to ensure that it fit properly, and she made any necessary adjustments at that time. Def.'s L.R. 56(a)(1) St. ¶ 61. On September 5, 2024, Perry met with Bradley again to deliver his partial upper denture and provided Bradley with care instructions by advising him to remove the denture at night and always wear it when leaving his cell. *Id.* ¶ 62. On October 17, 2024, Perry met with Bradley once more at his request for an adjustment to his denture. *Id.* ¶ 63. Perry made the requested adjustment and Bradley indicated that the fit was much improved. *Id.* Perry maintains that she has had no further interactions with Bradley since his October 17, 2024, visit. *Id.* ¶ 64.

**B. Procedural History**

Bradley filed his initial complaint under 42 U.S.C. § 1983 against six defendants: Gloria Perry, DMD, DDS Dental Director Kasabji ("Dental Director Kasabji"), DDS Richard B. Fisher ("Dr. Fisher"), Dr. Freston, DDS Doe, and Warden Jenniffer Reis. *See* Compl. Bradley claimed that defendants were deliberately indifferent to his dental needs in violation of the Eighth Amendment by failing to ensure that he had a dental bridge or partial denture. *See id*. He sued defendants in their individual and official capacities and sought declaratory relief and compensatory and punitive damages. *See id*.

On February 28, 2024, the Court issued an initial review order denying Bradley's request for declaratory relief, dismissing all defendants in their official capacities, and dismissing defendants Dental Director Kasabji, Dr. Fisher, Dr. Freston, DDS Doe, and Warden Jennifer Reis, in their individual capacities. *See* Initial Review Order ("IRO") 8, ECF No. 10. The Court allowed the case to proceed against Perry in her individual capacity on Bradley's dental deliberate indifference claim. *Id*. Perry was served, ECF No. 14, and answered Bradley's Complaint, ECF Nos. 20, 30.

Subsequently, on January 15, 2025, Perry filed her Motion for Summary Judgment, ECF No. 35, Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 35-1, Local Rule 56(a)(1) Statement of Facts, and supporting exhibits, ECF Nos. 35-4 to 35-12, including Bradley's sealed medical records, ECF No. 36. Bradley filed his response on February 11, 2025, which includes what can best be construed as an Opposition Memorandum, ECF No. 40 at 1-16, Plaintiff's Local Rule 56(a)(2) Statement of Disputed Issues of Fact, *id*.

at 17-35, Additional Material Facts, *id*. at 36-38, and exhibits, *id*. at 39-40.[10] Perry did not file a reply.

## II. LEGAL STANDARD

The principles governing review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proven at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close, contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam); *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023).

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Consistent with this duty, the "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and internal quotation marks omitted).

## III. DISCUSSION

Perry moves for summary judgment on the following four grounds: (1) Bradley's claim

---

[10] Bradley included all of his documents in opposition to Defendant's Motion for Summary Judgment in one packet. *See* ECF No. 40.

is barred by the doctrines of collateral estoppel and res judicata; (2) Bradley failed to exhaust his administrative remedies before filing this action, as required by the Prison Litigation Reform Act ("PLRA"); (3) Bradley's Eighth Amendment deliberate indifference claim fails as a matter of law; and, alternatively, (4) judgment should be granted in Perry's favor based on her entitlement to qualified immunity. Because I conclude that Bradley's Eighth Amendment deliberate indifference claim fails as a matter of law, I do not reach Perry's other arguments in support of summary judgment.

**A. Eighth Amendment Standard**

The Supreme Court has held that deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Second Circuit has applied the deliberate indifference standard set forth in *Estelle* to claims of denials or delay in the treatment of dental needs. *See Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (applying deliberate indifference standard in *Estelle* to claim of untreated tooth cavity); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (deliberate indifference to medical needs standard applicable to claim that prison dentist failed to property treat severe tooth decay). There is a subjective and an objective component to the deliberate indifference standard. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

To establish the objective component of an Eighth Amendment violation, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The Second Circuit has identified several non-exhaustive factors relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that

significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (internal quotation marks and citation omitted).

If the prisoner's claim arises from an unreasonable delay in treatment or a challenge to the kind of treatment received, the seriousness inquiry focuses on the challenged delay or treatment "rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702). "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.*

To satisfy the subjective component of the Eighth Amendment's deliberate indifference standard, a defendant must have been aware of a substantial risk that the incarcerated individual would suffer serious harm because of his or her actions or inactions. *See Salahuddin*, 467 F.3d at 280. Deliberate indifference is more than mere negligence—it is equivalent to "criminal recklessness," where an individual "disregards a risk of harm of which he is aware." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In general, medical malpractice does not suffice for deliberate indifference. *Estelle*, 429 U.S. at 106; *Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). Medical malpractice, may, however, rise to deliberate indifference if it "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "The reckless official need not desire

to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." *Salahuddin*, 467 F.3d at 280.

"Although *Farmer* requires that a plaintiff prove actual knowledge of a risk, evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (citing *Farmer*, 511 U.S. at 842); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.").

It is well established that "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (citing *Estelle*, 429 U.S. at 106-07). A medical provider may, however, act with deliberate indifference by consciously providing an individual with "an easier and less efficacious" treatment plan, particularly if the provider does so because of an ulterior motive, such as an improper monetary incentive. *Chance*, 143 F.3d at 703-04; *see also Braham v. Perelmuter*, No. 3:15-cv-1094 (JCH), 2017 WL 3222532, at *16-17 (D. Conn. July 28, 2017) (denying motion for summary judgment because a reasonable juror could infer that the defendant-dentist had chosen an easier but less effective treatment by extracting several of the plaintiff's teeth rather than trying to restore them); *Suarez v. Morton*, 170 F.4th 33, 60 (2d Cir. 2026) ("Even where a defendant does not outright refuse to remedy a risk, he may exhibit deliberate indifference to a medical need by consciously choos[ing] an easier and less efficacious treatment plan, or by intentionally denying or delaying access to medical care.") (citations and internal quotation marks omitted).

"Deliberate indifference may also be inferred where treatment was cursory or evidenced apathy." *Bardo v. Wright*, No. 3:17-cv-1430 (JBA), 2019 WL 5864820, at *6 (D. Conn. Nov. 8, 2019) (internal quotation marks omitted); *see also Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994) ("A jury could infer deliberate indifference from the fact that [defendant] knew the extent of [plaintiff's] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [plaintiff's] situation.").

Finally, "inherent in [the Court's] precedent is the principle that a defendant cannot have disregarded a serious risk to a plaintiff, of which he was aware, if he did not have the ability to take some action to alleviate that risk." *Suarez*, 170 F.4th at 61. Thus, "liability for deliberate indifference under the Eighth Amendment requires a showing that the defendant had some ability to mitigate the serious risk to a plaintiff's health or safety." *Id.*

**B. Application of Eighth Amendment Standard**

There is no question that Bradley waited a lengthy period of time for his partial denture. Bradley asserts in his Complaint that "proper dental function is necessary for a healthy diet," his "ability to speak properly is impaired," and "those without front teeth are socially ostracized." Compl. 9. However, Bradley has not asserted, nor do medical records indicate, that he experienced any pain as a result in the delay in getting the partial denture or that he was affected in such a way that he was unable to eat.

Perry argues that Bradley has failed to satisfy the objective prong under the Eighth Amendment because he cannot show that he was actually deprived of adequate medical care. *See* Def.'s Mem. 18; *see also Salahuddin*, 467 F.3d at 279 (stating that to meet the objective prong a plaintiff must show he was "actually deprived of adequate medical care" and a "prison official's duty is only to provide reasonable care"). Perry argues that she responded to

Bradley's inquiries and provided him with adequate and reasonable dental care. Def.'s Mem. 18-19.

Even assuming that Bradley has satisfied the objective component of a deliberate indifference claim, I conclude that Bradley has not satisfied the Eighth Amendment's subjective component.

Bradley lost his partial denture in December 2020, Compl. 4 ¶¶ 1-2, Perry did not begin her employment at Cheshire until August 2022, Def.'s L.R. 56(a)(1) St. ¶ 42, and she first had an initial consult with Bradley on November 9, 2022, per Dental Director Kasabji's request, *id*. ¶ 48. Accordingly, any delay in Bradley obtaining his partial denture up until August 2022 cannot be attributed to Perry.

On November 9, 2022, during Perry's initial consult with Bradley, she spoke with him about the feasibility of a partial denture and informed him that his canine teeth (teeth 6 and 11) would need to be extracted. Perry Decl. ¶ 17, ECF No. 35-9; Med. R. 57. In mid-February 2023, Perry completed a filling on Bradley's tooth number 15. Med. R. 52. At that appointment, Perry says she informed Bradley again that teeth 6 and 11 were too damaged to support a partial denture and would need to be extracted. Perry Decl. ¶ 18. According to Perry, Bradley declined this recommendation, stating "Canines are strong teeth." *Id.* Bradley states that Perry has "distorted" this interaction and explains that his "mere preference to keep the canines did not constitute a refusal." Pl.'s L.R. 56(a)(2) St. 25 ¶ 50; *id.* at 31 ¶ 5. He points out that his medical records in any event indicate there was a plan moving forward to extract the two teeth. *Id.*

Bradley has submitted evidence that by May 23, 2023 Perry was on notice of Bradley's desire to have the two canine teeth removed. On May 19, 2023, Bradley submitted an Inmate

Request Form stating: "To be clear, I absolutely consent to the pulling of two teeth (roots) in preparation for impressions and issue of a partial plate." ECF No. 40, at 39. Perry responded on May 23, 2023 stating: "You are on the list. If you are in pain you may write again." *Id.* On December 19, 2023, Dental Director Kasabji extracted teeth 6 and 11. Def.'s L.R. 56(a)(1) St. ¶ 55.

Although Bradley had to wait multiple months to have his canine teeth extracted even after consenting to the extraction, he has not provided sufficient evidence for a reasonable jury to conclude that the delay was the result of Perry's deliberate indifference to his serious dental needs. Perry acknowledges that her responsibilities at Cheshire involve prioritizing treatment but maintains she is not involved in scheduling treatments for prisoners for dental purposes. Perry Decl. ¶¶ 6, 8. Bradley states it is inconsistent for Perry to say her responsibilities involve prioritizing but not scheduling. Pl.'s L.R. 56(a)(2) St. 24 ¶ 44; *id.* at 30-31 ¶¶ 3-4. But it is not necessarily inconsistent for a medical professional to have a role in prioritizing treatment (for example, by marking a patient's need as emergent, urgent, or routine) but not have ultimate control over when the patient receives treatment. On the record before me, there is insufficient evidence for a reasonable jury to conclude that Perry could have scheduled Bradley's teeth extraction sooner and yet deliberately failed to take action. *See Suarez*, 170 F.4th at 61 (stating that "inherent in [the Court's] precedent is the principle that a defendant cannot have disregarded a serious risk to a plaintiff, of which he was aware, if he did not have the ability to take some action to alleviate that risk"). Moreover, Perry invited Bradley to contact her if he was in pain, and there is no evidence in the record that he did so. Indeed, his medical records indicate that at his appointment on December 19, 2023 he stated he was not in pain. Med. R. 37.

After Dental Director Kasabji extracted Bradley's canine teeth on December 19, 2023, Perry met with Bradley on April 9, 2024 to begin the process of fitting him for a partial upper denture. Def.'s L.R. 56(a)(1) St. ¶ 58. During this appointment, Perry took impressions of Bradley's mouth to create the partial upper plate. *Id*. On May 14, 2024, Bradley saw Perry and she took the final impression, bite impression, and selected the appropriate tooth shade for his upper partial denture. *Id*. ¶ 60. On September 5, 2024, Perry met with Bradley again to deliver his partial upper denture and provided him with care instructions by advising him to remove the denture at night and always wear it when leaving his cell. *Id*. ¶ 62. On October 17, 2024, Perry met with Bradley once more at his request for an adjustment to his denture. *Id*. ¶ 63.

There is no evidence in the record from which a reasonable jury could conclude that Perry had the ability to move along more quickly the process for Bradley to obtain his partial denture and deliberately chose not to do so. In addition, there is no evidence that Perry was aware of a substantial risk that Bradley would suffer serious harm and failed to take some action that she had the ability to take. Thus, I conclude that no reasonable jury could conclude that Perry acted with the requisite culpable state of mind to support Bradley's Eighth Amendment deliberate indifference claim to his dental needs. As no reasonable jury could determine after reviewing the present record that Perry is liable for an Eighth Amendment violation for deliberate indifference to Bradley's dental needs, summary judgment shall be granted to Perry on this ground.

## IV. CONCLUSION

For the foregoing reasons, Perry's Motion for Summary Judgment, ECF No. 35, is **GRANTED**.

**SO ORDERED.**

New Haven, Connecticut
August 21, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge